UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**FILED**

APR. 2 0 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| DUNKIN' DONUTS LLC,<br>  a Delaware Limited Liability Company,<br>DUNKIN' DONUTS USA LLC,<br>  a Delaware Limited Liability Company,<br>BASKIN-ROBBINS LLC,<br>  a Delaware Limited Liability Company,<br>BASKIN-ROBBINS USA LLC,<br>  a California Limited Liability Company,<br>TOGO'S EATERIES, INC.,<br>  a California Corporation, and<br>THIRD DUNKIN' DONUTS REALTY LLC,<br>  a Delaware Limited Liability Company, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiffs,

06CV2213
JUDGE LEINENWEBER
MAGISTRATE JUDGE KEYS

v.

| | |
|---|---|
| JAMES PIELET,<br>  an Illinois Resident,<br>MELISSA PIELET,<br>  an Illinois Resident,<br>BRADLEY PIELET,<br>  an Illinois Resident,<br>J.P. INVESTMENTS, INC.,<br>  an Illinois Corporation,<br>J.P. RETAIL INVESTMENTS LLC,<br>  an Illinois Limited Liability Company,<br>HIGHLAND PROPERTIES LLC<br>  an Illinois Limited Liability Company,<br>DEERFIELD PROPERTIES LLC<br>  an Illinois Limited Liability Company,<br>NORTHBROOK PROPERTIES LLC,<br>  an Illinois Limited Liability Company, and<br>RIVERWOODS PROPERTIES LLC,<br>  an Illinois Limited Liability Company, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for willful breach of contract and intentional trademark infringement, brought by sister-company franchisors Dunkin' Donuts, Baskin-Robbins, and Togo's Eateries, as well as their corporate affiliates for related trademark and real estate matters (collectively, "Franchisor" or "Plaintiffs").

The principal subject matter of this lawsuit includes six (6) independently owned and operated Illinois franchises (collectively, the "Shops"), each of which has been legally terminated by Franchisor due to the nonpayment of contractually required trademark royalties and advertising fees (collectively, "franchise fees") by the franchisees. However, each of the Shops is still currently being operated -- without a valid trademark license or authorization from Franchisor -- by one or more of the Defendants, in direct violation of six separate Franchise Agreements (collectively, the "Franchise Agreements") and the federal Lanham Act.

Defendant James Pielet has attempted to play a corporate shell game by (1) purportedly transferring -- without the contractually required consent of the Franchisor -- all of the franchisee interests of Defendant J.P. Investments, Inc. ("JPI") to various unauthorized transferee LLCs that he controls and by (2) filing for Chapter 7 bankruptcy protection for both himself as an individual and for his thinly disguised alter ego[1] -- fellow Defendant-Debtor JPI.[2] However, the Franchise Agreements expressly provide that any purported transfer of the franchisee's interest in the Shops without the "prior written consent" of the Franchisor is "null and void," of no legal effect, and a default under the Franchise Agreements.

---

[1] It is not at all necessary in this case for the Court to make a formal legal determination of "alter ego" status or to "pierce the corporate veil" to establish liability, because Defendant James Pielet individually signed multiple Personal Guarantees of the obligations of his various corporate franchisee personas, including fellow Defendant J.P. Investments, Inc. Nonetheless, it hardly takes much of a leap to decipher the abbreviation "J.P. Investments" as a slender fig leaf of a disguise for James Pielet's personal investments -- insulated in corporate form.

[2] After the United States Department of Justice intervened in Pielet's bankruptcy case and filed a brief alleging fraudulent bankruptcy filing in Florida -- in an improper attempt to take advantage of the generous Florida "homestead exemption" for a luxurious home in an upscale country club community in Boca Raton -- the United States Bankruptcy Court for the Southern District of Florida recently granted a transfer of venue to the United States Bankruptcy Court for the Northern District of Illinois. The Bankruptcy Court granted Dunkin' express relief from stay to pursue the instant litigation to enforce the terms of the Franchise Agreements.

2

In any event, despite the dizzying array of corporate shells involved in this case, the one thing that remains crystal clear is that -- no matter what corporate entity claims to be the franchisee operating the Shops day-to-day -- Franchisor is not being paid the contractually required franchise fees by anyone. Accordingly, as a matter of black letter franchise law, Plaintiffs have the absolute right to terminate the Franchise Agreements for nonpayment and to pursue payment of accrued unpaid franchise fees, late fees, interest, and attorneys' fees and costs from all of the individual and corporate guarantors of Defendant JPI's obligations under the Franchise Agreements.

The current situation is causing irreparable harm to Plaintiffs' three brands. Defendants are effectively *stealing* Plaintiffs' proprietary marks -- exploiting the trademarks, trade name, and trade dress of Dunkin' Donuts, Baskin-Robbins, and Togo's Eateries -- to line their own pockets with an unjust windfall. Defendants' ongoing trademark infringement -- whether as unlicensed "holdover franchisees" or as "unauthorized transferees" -- amounts to simple theft and should be brought to an end immediately.

Defendants' continued use and enjoyment of the Dunkin' Donuts, Baskin-Robbins, and Togo's Eateries trademarks, trade names, and trade dress following Franchisor's termination of the Franchise Agreements constitutes a clear-cut violation of the Lanham Act, 15 U.S.C. §§ 1114 *et. seq.* Consequently, Plaintiffs seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## The Terminated Shops

1. Three of the six Franchise Agreements at issue in this case were terminated by Plaintiff Dunkin' Donuts on July 28, 2005 -- due to the franchisees' nonpayment of franchise fees since approximately January 2005 -- pursuant to a July 18, 2005 Notice of Default and Notice to Cure and a July 28, 2005 Notice of Termination (the "2005 Notice of Termination").

2. The 2005 Notice of Termination terminated the three Franchise Agreements signed by Defendant JPI and its principal shareholder Defendant James Pielet (collectively, the "JPI Franchise Agreements") for the three Dunkin' Donuts shops (collectively, the "JPI Shops") located at, respectively:

a. 1609 West Grand Avenue, Waukegan, Illinois 60085 (PC 300728) (the "Waukegan Shop"), operated pursuant to a Franchise Agreement dated August 8, 1997 (the "Waukegan Franchise Agreement");

3

b.      2847 Dundee Road, Northbrook, Illinois 60062 (PC 307329) (the "Northbrook Shop"), operated pursuant to a Franchise Agreement dated May 24, 1989 (the "Northbrook Franchise Agreement"); and

c.      1145 Milwaukee Avenue, Riverwoods, Illinois 60015 (PC 307231) (the "Riverwoods Shop"), operated pursuant to a Franchise Agreement dated October 21, 1988 (the "Riverwoods Franchise Agreement").

3.      The three other Franchise Agreements at issue in this case (the "Non-JPI Franchise Agreements") were terminated by Plaintiffs on April 13, 2006 for nonpayment of contractually required franchise fees by the corporate guarantors of the obligations of the JPI Franchise Agreements -- pursuant to a March 27, 2006 Notice of Default and Notice to Cure and an April 13, 2006 Notice of Termination (the "2006 Notice of Termination").

4.      The 2006 Notice of Termination terminated the Non-JPI Franchise Agreements for the three additional shops (the "Non-JPI Shops") located at:

a.      1691-97 N. Weiland Road, Buffalo Grove, Illinois 60089 (PC 331782) (the "Buffalo Grove Shop"), operated pursuant to a Franchise Agreement dated June 11, 2002 (the "Buffalo Grove Franchise Agreement");

b.      1990 Skokie Valley Road, Highland Park, Illinois 60035 (PC 306048) (the "Highland Park Shop"), operated pursuant to a Franchise Agreement dated August 10, 2000 (the "Highland Park Franchise Agreement"); and

c.      499 Lake Cook Road, Deerfield, Illinois 60015 (PC 336980 ) (the "Deerfield Shop"), operated pursuant to a Franchise Agreement dated June 11, 2002 (the "Deerfield Franchise Agreement").

5.      The Highland Park Shop is a combination Dunkin' Donuts and Baskin-Robbins shop, commonly referred to as a "combo." The Deerfield Shop is a Dunkin', Baskin, and Togo's "trombo." Each of the four other shops at issue in this lawsuit sell products associated with the Dunkin' Donuts brand only.

6.      The Waukegan Shop and the Buffalo Grove Shop are both "full producers," meaning fresh product is baked directly on the premises. In contrast, the Northbrook Shop and the Riverwoods Shop are both "satellites," which sell product baked at the Waukegan Shop. Similarly, the Highland Park Shop and the Deerfield Shop are also satellites, which sell product baked at the Buffalo Grove Shop.

4

## The Parties

7.     Plaintiff Dunkin' Donuts LLC, successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

8.     Plaintiff Dunkin' Donuts USA LLC, Dunkin's wholly-owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Plaintiff Dunkin' Donuts USA LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts LLC has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops. Unless otherwise specified, Dunkin' Donuts LLC and Dunkin' Donuts USA LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

9.     Plaintiff Baskin-Robbins LLC, successor-in-interest to Baskin-Robbins, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Baskin-Robbins LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins LLC has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

10.    Plaintiff Baskin-Robbins USA LLC ("Baskin-Robbins" or "Baskin") successor-in-interest to Baskin-Robbins USA, Co., is a California limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Baskin-Robbins has

5

been licensed by Baskin-Robbins LLC to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin franchises are located. Baskin-Robbins is engaged in the business of franchising independent businesspersons to operate Baskin stores throughout the United States. Baskin franchisees are licensed to use the Baskin-Robbins trademarks, trade names, and service marks and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

11.     Plaintiff Togo's Eateries, Inc. ("Togo's Eateries" or "Togo's") is a California corporation with its principal place of business at 130 Royall Street, Canton, Massachusetts. Togo's is the successor-in-interest to M.T.C. Management, Inc. Togo's is engaged in the business of franchising independent business persons to operate Togo's Eatery restaurants throughout the United States. Togo's franchisees are licensed to use the trade names, service marks, and trademarks of Togo's and to operate under the Togo's System, which involves the production, merchandising, and sale of a variety of specialty sandwiches and related food and beverage items utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

12.     Plaintiff Third Dunkin' Donuts Realty LLC ("Third Dunkin' Realty"), successor-in-interest to Third Dunkin' Donuts Realty, Inc. and Dunkin' Donuts of Illinois, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Third Dunkin' Realty is a wholly-owned subsidiary of Dunkin' and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' to franchise independent business persons to operate Dunkin' Donuts shops at those locations.

13.     Defendant James Pielet is a natural person and a resident and citizen of Illinois. Defendant James Pielet is an officer, member, and/or shareholder of Defendants JPI, J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC (collectively, the "Corporate Franchisee Defendants"). In addition, Defendant James Pielet has personally guaranteed all of the obligations of all four of the Corporate Franchisee Defendants under the

6

Franchise Agreements and a Lease between Plaintiff Third Dunkin' Realty and Defendant Highland Properties LLC for the Highland Park Shop (the "Lease").

14.     Defendant Melissa Pielet is a natural person and a resident and citizen of Illinois and the wife of Defendant James Pielet. Defendant Melissa Pielet is an officer, member, and/or shareholder of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC. In addition, Defendant Melissa Pielet has personally guaranteed all of the obligations of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC under the Buffalo Grove Franchise Agreement and the Deerfield Franchise Agreement, respectively.

15.     Defendant Bradley Pielet is a natural person and a resident and citizen of Illinois. Defendant Bradley Pielet is an officer, member, and/or shareholder of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC. In addition, Defendant Bradley Pielet has personally guaranteed all of the obligations of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC under the Buffalo Grove Franchise Agreement and the Deerfield Franchise Agreement, respectively.

16.     Defendant J.P. Investments, Inc. ("JPI") is an Illinois corporation with its principal place of business in Waukegan, Illinois. At all times relevant to this action, Defendant JPI was the owner and operator of the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop, pursuant to the Waukegan Franchise Agreement, the Northbrook Franchise Agreement, and the Riverwoods Franchise Agreement, respectively. Defendant JPI was formerly a franchisee licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress at the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop. Defendant JPI is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop as a matter of law.

17.     Defendant J.P. Retail Investments LLC is an Illinois limited liability company with its principal place of business in Buffalo Grove, Illinois. At all times relevant to this action, Defendant J.P. Retail Investments LLC was the owner and operator of the Buffalo Grove Shop, pursuant to the Buffalo Grove Franchise Agreement. Defendant J.P. Retail Investments LLC was formerly a franchisee licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress at the Buffalo Grove Shop. In addition, Defendant J.P. Retail Investments LLC is jointly and severally liable as a guarantor of the obligations of Defendant JPI under the JPI Franchise Agreements, by reason of the common interest of James Pielet as a

7

"partner, member or shareholder" in each of the six Shops, pursuant to the Cross-Guarantee provision set forth in Paragraph 5.6 of the Buffalo Grove Franchise Agreement. On information and belief, based on the sworn testimony of Defendant James Pielet, Defendant J.P. Retail Investments LLC may claim an interest as *de facto* owner and operator of the Waukegan Shop, pursuant to an unauthorized, legally ineffective transfer of the interest of former franchisee JPI. Defendant J.P. Retail Investments LLC is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Buffalo Grove Shop and as an unauthorized transferee at the Waukegan Shop as a matter of law.

18.     Defendant Highland Properties LLC is an Illinois limited liability company with its principal place of business in Highland Park, Illinois. At all times relevant to this action, Defendant Highland Properties LLC was the owner and operator of the Highland Park Shop, pursuant to the Highland Park Franchise Agreement. Defendant Highland Properties LLC was formerly a franchisee licensed to use the Dunkin' Donuts and Baskin-Robbins trademarks, trade name, and trade dress at the Highland Park Shop. In addition, Defendant Highland Properties LLC is jointly and severally liable as a guarantor of the obligations of Defendant JPI under the JPI Franchise Agreements, by reason of the common interest of James Pielet as a "partner, member or shareholder" in each of the six Shops, pursuant to the Cross-Guarantee provision set forth in Paragraph 5.6 of the Highland Park Franchise Agreement. Defendant Highland Properties LLC is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Highland Park Shop as a matter of law.

19.     Defendant Deerfield Properties LLC is an Illinois limited liability company with its principal place of business in Deerfield, Illinois. At all times relevant to this action, Defendant Deerfield Properties LLC was the owner and operator of the Deerfield Shop, pursuant to the Deerfield Franchise Agreement. Defendant Deerfield Properties LLC was formerly a franchisee licensed to use the Dunkin' Donuts, Baskin-Robbins, and Togo's trademarks, trade name, and trade dress at the Deerfield Shop. In addition, Defendant Deerfield Properties LLC is jointly and severally liable as a guarantor of the obligations of Defendant JPI under the JPI Franchise Agreements, by reason of the common interest of James Pielet as a "partner, member or shareholder" in each of the six Shops, pursuant to the Cross-Guarantee provision set forth in Paragraph 5.6 of the Deerfield Franchise Agreement.

8

Defendant Deerfield Properties LLC is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Deerfield Shop as a matter of law.

20.     Defendant Northbrook Properties LLC is an Illinois limited liability company with its principal place of business in Northbrook, Illinois. On information and belief, based on the sworn testimony of Defendant James Pielet, Defendant Northbrook Properties LLC may claim an interest as *de facto* owner and operator of the Northbrook Shop, pursuant to an unauthorized, legally ineffective transfer of the interest of former franchisee JPI. Defendant Northbrook Properties LLC never signed a Franchise Agreement with any of the Plaintiffs and is engaged in willful trademark infringement as an unauthorized transferee at the Northbrook Shop as a matter of law.

21.     Defendant Riverwoods Properties LLC is an Illinois limited liability company with its principal place of business in Riverwoods, Illinois. On information and belief, based on the sworn testimony of Defendant James Pielet, Defendant Riverwoods Properties LLC may claim an interest as *de facto* owner and operator of the Riverwoods Shop, pursuant to an unauthorized, legally ineffective transfer of the interest of former franchisee JPI. Defendant Riverwoods Properties LLC never signed a Franchise Agreement with any of the Plaintiffs and is engaged in willful trademark infringement as an unauthorized transferee at the Riverwoods Shop as a matter of law.

22.     Defendants JPI and James Pielet (collectively, the "Debtors") filed for Chapter 7 bankruptcy protection on June 15, 2004 and October 7, 2004, respectively. However, on November 7, 2005, Plaintiffs obtained an Order from the Bankruptcy Court granting express relief from the automatic stay to "permit Dunkin' Donuts to take any and all action necessary under applicable law to enforce its rights in accordance with the Franchise Agreements including the filing of any necessary lawsuits in accordance with the terms of the Franchise Agreements." Moreover, the unpaid franchise fees sought by Plaintiffs in the instant lawsuit are all post-petition debts, which are not subject to the Bankruptcy Court proceedings and which relate to assets that are expressly not part of the Debtors' estates as a matter of law.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of costs and interest.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Defendants reside in and/or conduct business in this District. A substantial part of the events giving rise to this action occurred in this District, and the subject property is located herein.

25.    This Court has *in personam* jurisdiction over Defendants because they are residents and/or citizens of this District, they conduct business in this District, and/or a substantial part of the events giving rise to these claims occurred in this District.

**BACKGROUND**

**The Dunkin' Donuts System**

26.    Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

27.    Dunkin's wholly-owned subsidiary, Dunkin' Donuts USA, LLC, is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts LLC has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

28.    The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

29.    The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

30.    The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' over the years. Dunkin' and its franchisees have expended approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the last 29 years. Dunkin' spent approximately $94,000,000 in fiscal year 2000 alone on advertising and promotion.

31.    Dunkin' Donuts and its franchisees currently operate approximately 4,100 shops in the United States and 1,800 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

32.    As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known

10

trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

## The Baskin-Robbins System

33.     Baskin-Robbins is the franchisor of the Baskin-Robbins System.

34.     Baskin-Robbins LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins LLC has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

35.     Baskin-Robbins USA LLC. has been licensed by Baskin-Robbins LLC to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin-Robbins franchises are located. Baskin-Robbins USA LLC is authorized to use Baskin-Robbins LLC's trademarks, service marks and trade names and to sublicense Baskin franchisees to use these marks and trade names.

36.     Baskin-Robbins LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

37.     The Baskin-Robbins trademarks are utilized in interstate commerce.

38.     The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

39.     Baskin-Robbins and its franchisees currently operate approximately 2,200 stores in the United States and 2,600 stores outside of the United States. In the more than fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin stores.

40.     As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin's considerable goodwill and favorable reputation.

11

## The Togo's System

41.     Togo's is the franchisor of the Togo's franchise system.

42.     Togo's is the owner of the trademarks, service marks, and trade names "Togo's Eatery" and "Togo's Express," and related marks. Togo's has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1987 to identify its sandwich shops, and the specialty sandwiches and other products associated with those shops.

43.     Togo's owns federal registrations for the marks "Togo's Eatery," "Togo's Express," and related marks. Each of these registrations is in full force and effect.

44.     The Togo's trademarks and trade names are distinctive and famous and have acquired secondary meaning.

45.     The Togo's trademarks and trade names are utilized in interstate commerce.

46.     The Togo's marks have been very widely advertised and promoted by Togo's over the years. As a result, the Togo's marks have become famous throughout the United States.

47.     Togo's and its franchisees currently operate approximately 300 shops in the United States.

48.     As a result of the extensive sales, advertising, and promotion of items identified by the Togo's marks, the public has come to know and recognize the Togo's marks, and to associate them exclusively with products and services offered by Togo's and its franchisees. The Togo's marks are assets of inestimable value to Togo's representing and embodying Togo's considerable goodwill and favorable reputation.

## The Parties' Rights and Obligations Under the Franchise Agreements

49.     All of the Corporate Franchisee Defendants were licensed to use Dunkin's trademarks, trade name, and trade dress, subject to the terms of their Franchise Agreements.

50.     As noted above, certain Defendants were also concurrently licensed to use the Baskin-Robbins and/or Togo's trademarks and trade names in accordance with the terms of their Franchise Agreements.

51.     The terms of each of the Franchise Agreements for all three brands and for all six of the Shops are identical or virtually identical. The language of the Franchise Agreements cited to or quoted herein is representative of the language contained in each Franchise Agreement.

52. Under the terms of the JPI Franchise Agreements, the Corporate Franchisee Defendants (and/or their guarantors) agreed to pay Plaintiffs 4.9% of the retail gross sales of their Shops as a "Continuing Franchise Fee" and another 5.0% of their gross sales as a "Continuing Advertising Fee." *See* Franchise Agreements, ¶¶ 4.3, 4.4, 4.E, 4.F. *See also*; Contract Data Schedules, ¶¶ E, F.

53. In addition, the Franchise Agreements require Defendants to "pay, in addition to the unpaid amount, FRANCHISOR's then-current late fee for each unpaid invoice," interest at 1.5% per month, and "reasonable attorney's fees." *See* Franchise Agreements, ¶ 4.7.

54. Defendants also agreed to keep full, complete, and accurate books and accounts in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Plaintiffs. *See id.* ¶¶ 5.2, 5.H.

55. Defendants further agreed to comply with all applicable civil and criminal laws, rules, regulations, ordinances, and orders of public authorities. *See id.* ¶¶ 5.1.7, 5.Q.

56. Moreover, Defendants agreed not to perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Plaintiffs' proprietary marks and systems. *See id.* ¶¶ 8.0.1, 8.A.1.

57. Under the terms of the Franchise Agreements, Defendants may not "sell, assign, transfer, give away, pledge, mortgage or otherwise encumber" any interest in their Franchise Agreements without Plaintiffs' "prior written consent." *See id.* ¶¶ 10.1, 10.B.

58. The Franchise Agreements further provide that any purported assignment or transfer not having the prior written consent of Franchisor "shall be null and void and shall constitute default" under the Franchise Agreements. *See id.*

59. Pursuant to the terms of the Franchise Agreements, any transfer by Defendants of any interest in any of the franchises also expressly requires payment of a "Transfer Fee" to Plaintiffs. *See id.* ¶¶ 10.4, 10.C.2.g.

60. Additionally, Defendants signed certain acknowledgments and agreements concerning their continued use of Plaintiffs' proprietary marks, or any methods associated with the names "Dunkin' Donuts," "Baskin-Robbins," or "Togo's," after the termination of the Franchise Agreements. Defendants agreed that any unauthorized or continued use of the marks after termination constitutes irreparable harm subject to injunctive relief. *See id.* ¶¶ 7.1, 7.A.

61.     Defendants expressly agreed that, upon termination, they would comply with all post-termination obligations, including immediately ceasing to use the Plaintiffs' trademarks and any methods associated with the Dunkin' Donuts, Baskin-Robbins, and Togo's Systems. *See id.* ¶¶ 9.4.3, 9.F.2.)

62.     Finally, Defendants agreed that they would pay to Dunkin', Baskin, and Togo's all damages, with interest, costs and expenses, including reasonable attorneys' fees, incurred by reason of any default or termination of the Franchise Agreements. *See id.* ¶¶ 9.3, 9.F.1.

### Cross-Defaults

63.     The Franchise Agreements each contain a "cross-default" provision, which states, in Paragraph 9.0.4, or in a substantially similar Addendum 9.A.4, that "Franchisee shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . ." *See id.* ¶ 9.0.4.

64.     Thus, the termination of one Franchise Agreement constitutes good cause for the termination of all of the other Franchise Agreements, and each of them individually.

### Cross-Guarantees

65.     Pursuant to the Cross-Guarantees contained in Paragraph 5.6 of the Franchise Agreements, each corporate franchisee, and each partner, member, or shareholder thereof, is jointly and severally liable for the defaults of the others under their respective Franchise Agreements, where one or more of the partners, members, or shareholders holds or ever held an interest in another Dunkin' Donuts, Baskin-Robbins, or Togo's franchise. Consequently, because Defendant James Pielet now holds or has held an interest in all six of the Shops and Franchise Agreements, each of the Corporate Franchisee Defendants and their individual personal guarantors is jointly and severally liable for the defaults of each Defendant with respect to all six of the Shops and all six of the Franchise Agreements.

### Personal Guarantees

66.     On the signature page of each Franchise Agreement that they signed, Defendants James Pielet, Melissa Pielet, and Bradley Pielet (the "Individual Defendants") each also signed a "Personal Guarantee by Shareholders of a Corporation or Members of a Limited Liability Company" (the "Personal Guarantees") whereby they jointly and severally guaranteed all of the obligations of each Corporate Franchisee Defendant corporation or

14

limited liability company of which they are an officer, member, or shareholder, as set forth above.

67.     Under the provisions of the Personal Guarantees, the Individual Defendants each agreed to "hereby, jointly and severally, personally guarantee the full payment of FRANCHISEE's other obligations under this Franchise Agreement. . . . We personally agree that the Franchise Agreement shall be binding upon each of us personally." *See* Personal Guarantees.

### The Parties' Rights and Obligations Under the Lease

68.     Pursuant to the Lease between Plaintiff Third Dunkin' Realty and Defendant Highland Properties LLC, Plaintiff Third Dunkin' Realty has the right to terminate the Lease upon the termination of the Highland Park Franchise Agreement. *See* Lease, ¶ 15(a).

69.     Upon termination of the Lease, Plaintiff Third Dunkin' Realty may physically repossess the premises and "expel the LESSEE." *See id.* ¶ 19(c).

70.     Defendant Highland Properties LLC agreed in writing to pay to Dunkin' Realty all damages, with interest, costs and expenses, including reasonable attorneys' fees, incurred by reason of any default or termination of the Lease. *See id.* ¶ 3(d).

71.     Defendant James Pielet signed a Personal Guarantee whereby he guaranteed the obligations under the Lease.

72.     Plaintiffs also have similar rights to take possession of the Waukegan Shop, the Northbrook Shop, and the Buffalo Grove Shop, pursuant to certain lease riders and lease option agreements for the premises.

### Defendants' Defaults and Termination

73.     The Corporate Franchisee Defendants and the Individual Defendants have knowingly, purposefully, and repeatedly breached the terms of the Franchise Agreements by, without limitation, refusing to pay, when due, franchise fees, advertising fees, late fees, interest, and attorneys' fees and costs.

74.     Defendant JPI ceased paying contractually required franchise fees and advertising fees for the JPI Shops beginning in approximately January 2005.

75.     On July 18, 2005, Plaintiffs sent Defendants JPI and James Pielet a Notice to Cure describing the nature of the defaults under the JPI Franchise Agreements and providing them

with seven days to cure those defaults, pursuant to the applicable seven-day cure period specified in the contracts. *See* Franchise Agreements, ¶¶ 9.1.1, 9.B.2.

76.     Instead of sending a check to cure the defaults, Defendants JPI and James Pielet allowed seven days to pass without proffering a cure.

77.     Accordingly, on July 28, 2005, Plaintiffs served Defendants JPI and James Pielet with the 2005 Notice of Termination terminating each of the three JPI Franchise Agreements, effective immediately upon receipt of the Notice, stating the grounds for termination, and requesting that Defendants JPI and James Pielet immediately comply with their post-termination obligations, as set forth in the JPI Franchise Agreements.

78.     Defendants JPI and James Pielet failed to comply with the 2005 Notice of Termination and still continue to operate the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop today, as if JPI were still a licensed franchisee, which it is not.

79.     To date, the accrued past-due accounts receivables amount -- owed by all of the Corporate Franchisee Defendants as well as the Individual Defendants (as personal guarantors) -- exceeds $182,000, plus attorneys' fees and costs, and those figures continue to grow on a daily basis.

80.     On March 27, 2006, Plaintiffs sent Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC a Notice of Default and Notice to Cure describing the nature of the defaults under the JPI Franchise Agreements, citing the cross-guarantee provisions of Paragraph 5.6, and providing seven days to cure those defaults, pursuant to the applicable seven-day cure period specified in the contracts. *See* Franchise Agreements, ¶¶ 5.6, 9.1.1, 9.B.2.

81.     Instead of sending a check to cure the defaults, Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC allowed seven days to pass without proffering a cure.

82.     Accordingly, on April 13, 2006, Plaintiffs served Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC with the 2006 Notice of Termination terminating the Non-JPI Franchise Agreements and the Lease, effective immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and requesting that Defendants J.P. Retail Investments LLC, Highland Properties

LLC, and Deerfield Properties LLC immediately comply with their post-termination obligations, as set forth in the Franchise Agreements.

83.     Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC failed to comply with the 2006 Notice of Termination and still continue to operate the Buffalo Grove Shop, the Highland Park Shop, and the Deerfield Shop, as if they were still licensed franchisees, which they are not.

84.     Defendants' willful refusal to cease operating using Plaintiffs' trademarks, trade names, and trade dress as unlicensed "holdover franchisees" constitutes a violation of the federal Lanham Act as a matter of law and warrants an award of treble damages for trademark infringement, trade dress infringement, and unfair competition.

85.     Defendants' actions have caused and continue to cause irreparable harm to Plaintiffs, including harm to the reputation and goodwill of all three brands. Granting the requested permanent injunctive relief would not harm any third parties and would advance the public interest.

## The Unauthorized Purported Transfers

86.     In sworn testimony in federal Bankruptcy Court -- and also in written submissions in Illinois State Court -- Defendants James Pielet and JPI took the position that, despite their failure to pay any Transfer Fee to Plaintiff Dunkin' Donuts, and despite the lack of any written paperwork approving such a transfer, the Debtors had transferred their interests in the Waukegan Franchise Agreement, the Northbrook Franchise Agreement, and the Riverwoods Franchise Agreement to, respectively, Defendant J.P. Retail Investments LLC, Defendant Northbrook Properties LLC, and Defendant Riverwoods Properties LLC (collectively, the "Unauthorized Transferees").

87.     Indeed, the Debtors affirmatively represented to both the Bankruptcy Court and the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois in a separate state court proceeding that Defendants J.P. Retail Investments LLC, Northbrook Properties LLC, and Riverwoods Properties LLC were "operating" and had an "ownership interest" in the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop, respectively.

88.     Defendants never paid a transfer fee with respect to any of those three shops. Nor did Plaintiffs ever consent to the transfer of any of the aforementioned shops to the Unauthorized Transferees.

17

89. Thus, Defendants J.P. Retail Investments LLC, Northbrook Properties LLC, and Riverwoods Properties LLC never had a license, authorization, or consent to use Plaintiffs' trademarks, trade name, or trade dress at Waukegan Shop, the Northbrook Shop, or the Riverwoods Shop.

90. Accordingly, to the extent that the Unauthorized Transferees are operating the Waukegan Shop, the Northbrook Shop, or the Riverwoods Shop using any of Plaintiffs' proprietary marks, such use constitutes trademark infringement in direct violation of the Lanham Act.

91. As such, Plaintiffs are entitled to treble damages and disgorgement of all of the profits derived from the unlicensed use of the marks by the Unauthorized Transferees because they constitute unjust enrichment resulting from Defendants' willful trademark infringement.

92. Moreover, the purported transfer of the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop is "null and void" as a matter of law. *See* JPI Franchise Agreements, ¶¶ 10.1, 10.B. Indeed, the mere *attempt* to transfer any interest in the JPI Franchise Agreements without Plaintiffs' "prior written consent" constitutes a further default and good cause for termination of the Waukegan Franchise Agreement, the Northbrook Franchise Agreement, and the Riverwoods Franchise Agreement.

93. Based on the foregoing, Plaintiffs plead the following five causes of action against the Defendants indicated below:

**COUNT I**

**Breach of Contract -- All Six Franchise Agreements**

**(Against the Four Corporate Franchisee Defendants
and the Three Individual Defendants)**

94. The allegations contained in each of the paragraphs above are hereby incorporated by reference as if set forth fully herein.

95. Defendants' failure to pay all monies due to Franchisor, after notice and an opportunity to cure, constitutes a material breach of the applicable contractual provisions cited herein.

96. Defendants' breaches of their Franchise Agreements constitute good cause for terminating the Franchise Agreements.

18

97. As a direct and proximate result of these breaches, Plaintiffs Dunkin', Baskin, and Togo's have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to suffer substantial losses, fees, and expenses in excess of $75,000.

## COUNT II

### Breach of Contract -- The Lease

### (Against Defendants Highland Properties LLC and James Pielet)

98. The allegations contained in each of the paragraphs above are hereby incorporated by reference as if set forth fully herein.

99. The conduct described in this Complaint constitutes a material breach of the Lease.

100. Defendants' breaches of the Lease constitute good cause for terminating the Lease.

101. As a direct and proximate result of this breach, Plaintiff Third Dunkin' Realty has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur substantial losses, fees, and expenses.

## COUNT III

### Trademark Infringement

### (Against All Nine Defendants)

102. The allegations contained in each of the paragraphs above are hereby incorporated by reference as if set forth fully herein.

103. Defendants' use of Plaintiffs' trademarks and trade names outside the scope of the Franchise Agreements and without Plaintiffs' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs, which is not true. Such continued use of Plaintiffs' trademarks and trade name infringes their exclusive rights in the trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

104. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

105.    As a direct and proximate result of these actions, Plaintiffs Dunkin', Baskin, and Togo's have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV

### Unfair Competition

### (Against All Nine Defendants)

106.    The allegations contained in each of the paragraphs above are hereby incorporated by reference as if set forth fully herein.

107.    Defendants' use of Plaintiffs' trademarks, trade name, and trade dress outside the scope of their Franchise Agreements and without Plaintiffs' consent is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such continued unauthorized use of Plaintiffs' trademarks and trade names violate § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

108.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

109.    As a direct and proximate result of these actions, Plaintiffs Dunkin', Baskin, and Togo's have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT V

### Trade Dress Infringement

### (Against All Nine Defendants)

110.    The allegations contained in each of the paragraphs above are hereby incorporated by reference as if set forth fully herein.

111.    The Shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts," "Baskin-Robbins," and/or "Togo's" appear for consumers to see.

112.    Each of the Shops is labeled with Plaintiffs' trademarks and trade names in the same lettering style and in the same distinctive color scheme as Plaintiffs use for the authorized shops operated by Plaintiffs' licensees.

113.    Defendants' use of the trade dress that is identical or confusingly similar to Plaintiffs' trade dress constitutes a false designation of the origin of the Defendants' Shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of the Defendants' Shops with the licensed shops operated by Plaintiffs' licensees. Such adoption of Plaintiffs' trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

114.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

115.    As a direct and proximate result of these actions, Plaintiffs Dunkin', Baskin, and Togo's have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a declaratory judgment order stating that Defendants' conduct violated the terms of the Franchise Agreements and Lease and constitutes good cause for terminating the Franchise Agreements and Lease;

B.    Enter judgment in favor of Plaintiffs for the damages suffered as a result of Defendants' breaches of the Franchise Agreements and Lease;

C.    Award Plaintiffs judgment against Defendants for the damages that Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

D.    Enter a permanent injunctive order ratifying and enforcing the termination of the Franchise Agreements and the Lease as of the effective date of the Notices of Termination;

E.  Enter an order enjoining Defendants, and all those acting in concert with them, by preliminary and permanent injunction, from using the Dunkin' Donuts, Baskin-Robbins, and Togo's trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Plaintiffs;

F.  Enter an order directing Defendants to comply with all of their post-termination obligations as provided in the Franchise Agreements, Lease, and any applicable lease riders and lease option agreements;

G.  Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

H.  Award Plaintiffs such exemplary or punitive damages as are deemed appropriate in light of the willful, intentional, and malicious nature of Defendants' conduct;

I.  Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

J.  Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,

W. Scott Porterfield
Steven J. Yatvin
BARACK FERRAZZANO KIRSCHBAUM
  PERLMAN & NAGELBERG LLP
333 West Wacker Drive
Suite 2700
Chicago, Illinois 60606
(312) 984-3100

Of Counsel:

Dunkin' Donuts LLC,
Dunkin' Donuts USA LLC,
Baskin-Robbins USA LLC,
Baskin-Robbins LLC,
Togo's Eateries, Inc., and
Third Dunkin' Donuts Realty LLC

Robert L. Zisk
David E. Worthen
Tristan B.L. Siegel
GRAY, PLANT, MOOTY, MOOTY
   & BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, D.C. 20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

Dated:  April 20, 2006

GP:1929035 v1