UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DUNKIN' DONUTS LLC, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 06-C-2213 |
| ) | |
| JAMES PIELET, *et al.* ) | Judge Leinenweber |
| ) | |
| Defendants. ) | Magistrate Judge Keys |

**CERTIFICATION OF JACK LAUDERMILK
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

1. My name is Jack Laudermilk. I am a citizen and resident of the Commonwealth of Massachusetts, and I make this Certification based on personal knowledge and in support of Plaintiffs' Memorandum in Support of its Motion for a Preliminary Injunction.

2. I am Associate General Counsel for Dunkin' Brands, Inc., and its subsidiaries, including all of the Plaintiffs in this case. As Associate General Counsel, I am the custodian of and have access to executed copies of all of Plaintiffs' Franchise Agreements, leases, correspondence, and other related documents and records concerning each Dunkin' Donuts, Baskin-Robbins, and Togo's franchise. This includes the documents and records relating to the shops owned by Defendants in this case. The documents attached hereto are true and correct copies of records kept in the course of Plaintiffs' regularly conducted business activities, and it is Plaintiffs' normal practice to make and keep these documents. My job responsibilities include overseeing litigation of cases brought by or against franchisees. I am also familiar with the business of Dunkin', Baskin, and Togo's generally, including having knowledge regarding the resources they have dedicated toward their intellectual property and the relationship between franchisees' operations and the goodwill associated with Plaintiffs' marks.

3.  Three of the six Franchise Agreements at issue in this case were terminated by Dunkin' on July 28, 2005 – due to the franchisees' nonpayment of franchise fees since approximately January 2005 – pursuant to a July 18, 2005 Notice of Default and Notice to Cure and a July 28, 2005 Notice of Termination (the "2005 Notice of Termination").

4.  The 2005 Notice of Termination terminated the three JPI Franchise Agreements signed by Defendant JPI and its principal shareholder Defendant James Pielet for the three Dunkin' Donuts shops (collectively, the "JPI Shops") located at, respectively:

    a.  1609 West Grand Avenue, Waukegan, Illinois 60085 (PC 300728) (the "Waukegan Shop"), operated pursuant to a Franchise Agreement dated August 8, 1997 (the "Waukegan Franchise Agreement");

    b.  2847 Dundee Road, Northbrook, Illinois 60062 (PC 307329) (the "Northbrook Shop"), operated pursuant to a Franchise Agreement dated May 24, 1989 (the "Northbrook Franchise Agreement"); and

    c.  1145 Milwaukee Avenue, Riverwoods, Illinois 60015 (PC 307231) (the "Riverwoods Shop"), operated pursuant to a Franchise Agreement dated October 21, 1988 (the "Riverwoods Franchise Agreement").

5.  The three Non-JPI Franchise Agreements were terminated by Plaintiffs on April 13, 2006 for nonpayment of contractually required franchise fees by the corporate guarantors of the obligations of the JPI Franchise Agreements – pursuant to a March 27, 2006 Notice of Default and Notice to Cure and an April 13, 2006 Notice of Termination (the "2006 Notice of Termination").

6.  The 2006 Notice of Termination terminated the Non-JPI Franchise Agreements for the three additional shops (the "Non-JPI Shops") located at:

    a.  1691-97 N. Weiland Road, Buffalo Grove, Illinois 60089 (PC 331782) (the "Buffalo Grove Shop"), operated pursuant to a Franchise Agreement dated June 11, 2002 (the "Buffalo Grove Franchise Agreement");

    b.  1990 Skokie Valley Road, Highland Park, Illinois 60035 (PC 306048) (the "Highland Park Shop"), operated pursuant to a Franchise Agreement dated August 10, 2000 (the "Highland Park Franchise Agreement"); and

        c.      499 Lake Cook Road, Deerfield, Illinois 60015 (PC 336980 ) (the "Deerfield Shop"), operated pursuant to a Franchise Agreement dated June 11, 2002 (the "Deerfield Franchise Agreement").

      7.      The Highland Park Shop is a combination Dunkin' Donuts and Baskin-Robbins shop, commonly referred to as a "combo." The Deerfield Shop is a Dunkin', Baskin, and Togo's "trombo." Each of the four other shops at issue in this lawsuit sell products associated with the Dunkin' Donuts brand only.

      8.      The Waukegan Shop and the Buffalo Grove Shop are both "full producers," meaning fresh product is baked directly on the premises. In contrast, the Northbrook Shop and the Riverwoods Shop are both "satellites," which sell products baked at the Waukegan Shop. Similarly, the Highland Park Shop and the Deerfield Shop are also satellites, which sell products baked at the Buffalo Grove Shop.

      9.      Plaintiff Dunkin' Donuts LLC, successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

      10.      Plaintiff Dunkin' Donuts USA LLC, Dunkin's wholly-owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Plaintiff Dunkin' Donuts USA LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts LLC has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

11. Plaintiff Baskin-Robbins LLC, successor-in-interest to Baskin-Robbins, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Baskin-Robbins LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins LLC has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

12. Plaintiff Baskin-Robbins USA LLC ("Baskin-Robbins" or "Baskin") successor-in-interest to Baskin-Robbins USA, Co., is a California limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Baskin-Robbins has been licensed by Baskin-Robbins LLC to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin franchises are located. Baskin-Robbins is engaged in the business of franchising independent businesspersons to operate Baskin stores throughout the United States. Baskin franchisees are licensed to use the Baskin-Robbins trademarks, trade names, and service marks and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

13. Plaintiff Togo's Eateries, Inc. ("Togo's Eateries" or "Togo's") is a California corporation with its principal place of business at 130 Royall Street, Canton, Massachusetts. Togo's is the successor-in-interest to M.T.C. Management, Inc. Togo's is engaged in the business of franchising independent business persons to operate Togo's Eatery restaurants throughout the United States. Togo's franchisees are licensed to use the trade names, service marks, and trademarks of Togo's and to operate under the Togo's System, which involves the production, merchandising, and sale of a variety of specialty sandwiches and related food and beverage items utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

14. Plaintiff Third Dunkin' Donuts Realty LLC ("Third Dunkin' Realty"), successor-in-interest to Third Dunkin' Donuts Realty, Inc. and Dunkin' Donuts of Illinois, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. Third Dunkin' Realty is a wholly-owned subsidiary of Dunkin' and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' to franchise independent business persons to operate Dunkin' Donuts shops at those locations.

15. Defendant James Pielet is a natural person and a resident and citizen of Illinois. Defendant James Pielet is an officer, member, and/or shareholder of Defendants JPI, J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC (collectively, the "Corporate Franchisee Defendants"). In addition, Defendant James Pielet has personally guaranteed all of the obligations of all four of the Corporate Franchisee Defendants under the Franchise Agreements and a Lease between Plaintiff Third Dunkin' Realty and Defendant Highland Properties LLC for the Highland Park Shop (the "Lease").

16. Defendant Melissa Pielet is a natural person and a resident and citizen of Illinois and the wife of Defendant James Pielet. Defendant Melissa Pielet is an officer, member, and/or shareholder of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC. In addition, Defendant Melissa Pielet has personally guaranteed all of the obligations of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC under the Buffalo Grove Franchise Agreement and the Deerfield Franchise Agreement, respectively.

17. Defendant Bradley Pielet is a natural person and a resident and citizen of Illinois and the son of Jim and Melissa Pielet. Defendant Bradley Pielet is an officer, member, and/or shareholder of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC. In addition, Defendant Bradley Pielet has personally guaranteed all of the obligations of Defendants J.P. Retail Investments LLC and Deerfield Properties LLC under the Buffalo Grove Franchise Agreement and the Deerfield Franchise Agreement, respectively.

18. Defendant J.P. Investments, Inc. ("JPI") is an Illinois corporation with its principal place of business in Waukegan, Illinois. At all times relevant to this action, Defendant JPI was the owner and operator of the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop, pursuant to the Waukegan Franchise Agreement, the Northbrook Franchise Agreement, and the Riverwoods Franchise Agreement, respectively. Defendant JPI

was formerly a franchisee licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress at the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop. Defendant JPI is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop as a matter of law.

    19.    Defendant J.P. Retail Investments LLC is an Illinois limited liability company with its principal place of business in Buffalo Grove, Illinois. At all times relevant to this action, Defendant J.P. Retail Investments LLC was the owner and operator of the Buffalo Grove Shop, pursuant to the Buffalo Grove Franchise Agreement. Defendant J.P. Retail Investments LLC was formerly a franchisee licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress at the Buffalo Grove Shop. In addition, Defendant J.P. Retail Investments LLC is jointly and severally liable as a guarantor of the obligations of Defendant JPI under the JPI Franchise Agreements, by reason of the common interest of James Pielet as a "partner, member or shareholder" in each of the six Shops, pursuant to the Cross-Guarantee provision set forth in Paragraph 5.6 of the Buffalo Grove Franchise Agreement. On information and belief, based on the sworn testimony of Defendant James Pielet, Defendant J.P. Retail Investments LLC may claim an interest as *de facto* owner and operator of the Waukegan Shop, pursuant to an unauthorized, legally ineffective transfer of the interest of former franchisee JPI. Defendant J.P. Retail Investments LLC is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Buffalo Grove Shop and as an unauthorized transferee at the Waukegan Shop as a matter of law.

    20.    Defendant Highland Properties LLC is an Illinois limited liability company with its principal place of business in Highland Park, Illinois. At all times relevant to this action, Defendant Highland Properties LLC was the owner and operator of the Highland Park Shop, pursuant to the Highland Park Franchise Agreement. Defendant Highland Properties LLC was formerly a franchisee licensed to use the Dunkin' Donuts and Baskin-Robbins trademarks, trade name, and trade dress at the Highland Park Shop. In addition, Defendant Highland Properties LLC is jointly and severally liable as a guarantor of the obligations of Defendant JPI under the JPI Franchise Agreements, by reason of the common interest of James Pielet as a "partner, member or shareholder" in each of the six Shops, pursuant to the Cross-Guarantee provision set forth in Paragraph 5.6 of the Highland Park Franchise Agreement. Defendant

Highland Properties LLC is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Highland Park Shop as a matter of law.

21. Defendant Deerfield Properties LLC is an Illinois limited liability company with its principal place of business in Deerfield, Illinois. At all times relevant to this action, Defendant Deerfield Properties LLC was the owner and operator of the Deerfield Shop, pursuant to the Deerfield Franchise Agreement. Defendant Deerfield Properties LLC was formerly a franchisee licensed to use the Dunkin' Donuts, Baskin-Robbins, and Togo's trademarks, trade name, and trade dress at the Deerfield Shop. In addition, Defendant Deerfield Properties LLC is jointly and severally liable as a guarantor of the obligations of Defendant JPI under the JPI Franchise Agreements, by reason of the common interest of James Pielet as a "partner, member or shareholder" in each of the six Shops, pursuant to the Cross-Guarantee provision set forth in Paragraph 5.6 of the Deerfield Franchise Agreement. Defendant Deerfield Properties LLC is engaged in willful trademark infringement as an unauthorized "holdover franchisee" at the Deerfield Shop as a matter of law.

22. Defendant Northbrook Properties LLC is an Illinois limited liability company with its principal place of business in Northbrook, Illinois. On information and belief, based on the sworn testimony of Defendant James Pielet, Defendant Northbrook Properties LLC may claim an interest as *de facto* owner and operator of the Northbrook Shop, pursuant to an unauthorized, legally ineffective transfer of the interest of former franchisee JPI. Defendant Northbrook Properties LLC never signed a Franchise Agreement with any of the Plaintiffs and is engaged in willful trademark infringement as an unauthorized transferee at the Northbrook Shop as a matter of law.

23. Defendant Riverwoods Properties LLC is an Illinois limited liability company with its principal place of business in Riverwoods, Illinois. On information and belief, based on the sworn testimony of Defendant James Pielet, Defendant Riverwoods Properties LLC may claim an interest as *de facto* owner and operator of the Riverwoods Shop, pursuant to an unauthorized, legally ineffective transfer of the interest of former franchisee JPI. Defendant Riverwoods Properties LLC never signed a Franchise Agreement with any of the Plaintiffs and is engaged in willful trademark infringement as an unauthorized transferee at the Riverwoods Shop as a matter of law.

24. Defendants JPI and James Pielet (collectively, the "Debtors") filed for Chapter 7 bankruptcy protection on June 15, 2004 and October 7, 2004, respectively. However, on November 7, 2005, Plaintiffs obtained an Order from the United States Bankruptcy Court for the Southern District of Florida granting express relief from the automatic stay to "permit Dunkin' Donuts to take any and all action necessary under applicable law to enforce its rights in accordance with the Franchise Agreements including the filing of any necessary lawsuits in accordance with the terms of the Franchise Agreements." Moreover, the unpaid franchise fees sought by Plaintiffs in the instant lawsuit are all post-petition debts, which are not subject to the Bankruptcy Court proceedings and which relate to assets that are expressly not part of the Debtors' estates as a matter of law.

25. Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

26. Dunkin's wholly-owned subsidiary, Dunkin' Donuts USA LLC, is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks.

27. Dunkin' Donuts USA LLC owns numerous federal registrations for the mark "Dunkin' Donuts," and related marks. Among those registrations are Registration Nos. 748,901, 1,148,165, and 1,159,354. A true and correct copy of these documents is attached hereto as Exhibit P. Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

28. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

29. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

30. The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts and its franchisees have expended approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the last twenty-nine years. Dunkin' Donuts spent approximately $94,000,000 in fiscal year 2000 alone on advertising and promotion. *See* Exhibit Q (attached hereto).

31. Dunkin' and its franchisees currently operate approximately 4,100 shops in the United States and approximately 1,800 shops outside of the United States.

32. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style.

33. In the more than forty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

34. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees.

35. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

36. Baskin-Robbins is the franchisor of the Baskin-Robbins System.

37. Baskin-Robbins LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks.

38. Baskin-Robbins LLC has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

39. Baskin-Robbins USA LLC. has been licensed by Baskin-Robbins LLC to grant franchises for the operation of Baskin-Robbins stores within the area in which Defendants' Baskin-Robbins franchises are located.

40. Baskin-Robbins USA LLC is authorized to use Baskin-Robbins LLC's trademarks, service marks and trade names and to sublicense Baskin franchisees to use these marks and trade names.

41. Baskin-Robbins LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

42. The Baskin-Robbins trademarks are utilized in interstate commerce.

43. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years.

44. As a result, the Baskin-Robbins marks have become famous throughout the United States.

45. Baskin-Robbins and its franchisees currently operate approximately 2,200 stores in the United States and 2,600 stores outside of the United States.

46. In the more than fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin stores.

47. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin and its franchisees.

48. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin's considerable goodwill and favorable reputation.

49. Togo's is the franchisor of the Togo's franchise system.

50. Togo's is the owner of the trademarks, service marks, and trade names "Togo's Eatery" and "Togo's Express," and related marks.

51. Togo's has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1987 to identify its sandwich shops, and the specialty sandwiches and other products associated with those shops.

52. Togo's owns federal registrations for the marks "Togo's Eatery," "Togo's Express," and related marks. Each of these registrations is in full force and effect.

53. The Togo's trademarks and trade names are distinctive and famous and have acquired secondary meaning.

54. The Togo's trademarks and trade names are utilized in interstate commerce.

55. The Togo's marks have been very widely advertised and promoted by Togo's over the years. As a result, the Togo's marks have become famous throughout the United States.

56. Togo's and its franchisees currently operate approximately 300 shops in the United States.

57. As a result of the extensive sales, advertising, and promotion of items identified by the Togo's marks, the public has come to know and recognize the Togo's marks, and to associate them exclusively with products and services offered by Togo's and its franchisees.

58. The Togo's marks are assets of inestimable value to Togo's representing and embodying Togo's considerable goodwill and favorable reputation.

59. The Corporate Franchisee Defendants and the Individual Defendants have repeatedly breached the terms of the Franchise Agreements by, without limitation, refusing to pay, when due, franchise fees, advertising fees, late fees, interest, and attorneys' fees and costs.

60. Defendant JPI ceased paying any of its contractually required franchise fees and advertising fees for the JPI Shops beginning in approximately January 2005.

61. On July 18, 2005, Plaintiffs sent Defendants JPI and James Pielet a Notice to Cure describing the nature of the defaults under the JPI Franchise Agreements and providing them with seven days to cure those defaults, pursuant to the applicable seven-day cure period specified in the contracts.

62. Instead of sending a check to cure the defaults, Defendants JPI and James Pielet allowed seven days to pass without proffering a cure.

63. Accordingly, on July 28, 2005, Plaintiffs served Defendants JPI and James Pielet with the 2005 Notice of Termination, terminating each of the three JPI Franchise Agreements, effective immediately upon receipt of the Notice, stating the grounds for termination, and requesting that Defendants JPI and James Pielet immediately comply with their post-termination obligations, as set forth in the JPI Franchise Agreements.

64. Defendants JPI and James Pielet failed to comply with the 2005 Notice of Termination and still continue to operate the Waukegan Shop, the Northbrook Shop, and the Riverwoods Shop today, as if JPI were still a Dunkin' Donuts licensed franchisee, which is not the case.

65. To date, the accrued past-due accounts receivables amount – owed by all of the Corporate Franchisee Defendants as well as the Individual Defendants (as personal guarantors) – approximates $200,000, plus attorneys' fees and costs, and those figures continue to grow on a daily basis.

66. On March 27, 2006, Plaintiffs sent Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC a Notice of Default and Notice to Cure describing the nature of the defaults under the JPI Franchise Agreements, citing the cross-guarantee provisions of Paragraph 5.6, and providing seven days to cure those defaults, pursuant to the applicable seven-day cure period specified in the contracts.

67. Instead of sending a check to cure the defaults, Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC allowed seven days to pass without proffering a cure.

68. Accordingly, on April 13, 2006, Plaintiffs served Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC with the 2006 Notice of Termination terminating the Non-JPI Franchise Agreements and the Lease, effective immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and requesting that Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC immediately comply with their post-termination obligations, as set forth in the Franchise Agreements.

69. Defendants J.P. Retail Investments LLC, Highland Properties LLC, and Deerfield Properties LLC failed to comply with the 2006 Notice of Termination and still continue to operate the Buffalo Grove Shop, the Highland Park Shop, and the Deerfield Shop, as if they were still licensed franchisees, which they are not.

70. Defendants' refusal to cease operating using Plaintiffs' trademarks, trade names, and trade dress as unlicensed "holdover franchisees" constitutes a violation of the federal Lanham Act as a matter of law and warrants an award of treble damages for trademark infringement, trade dress infringement, and unfair competition.

71. Defendants' actions have caused and continue to cause irreparable harm to Plaintiffs, including harm to the reputation and goodwill of all three brands. Granting the requested permanent injunctive relief would not harm any third parties and would advance the public interest.

72. Defendants never paid a transfer fee with respect to any of those three shops. Nor did Plaintiffs ever consent to the transfer of any of the aforementioned shops to the Unauthorized Transferees.

73. Thus, Defendants J.P. Retail Investments LLC, Northbrook Properties LLC, and Riverwoods Properties LLC never had a license, authorization, or consent to use Plaintiffs' trademarks, trade name, or trade dress at Waukegan Shop, the Northbrook Shop, or the Riverwoods Shop.

74. None of the Defendants is currently licensed or authorized to use any of Plaintiffs' trademarks at any of the six shops at issue in this case.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this 16th day of May, 2006.

_____
Jack Laudermilk

GP:1949524 v1

13