IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JUN 1 6 2006

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

DUNKIN' DONUTS LLC, et al.,

Plaintiffs,

v.

JAMES PIELET, et al.,

Defendants.

Case No. 06 C 2213

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Dunkin' Donuts LLC and related companies (hereinafter, "Dunkin' Donuts") filed this suit for damages and injunctive relief against six independently owned donut shops alleging violations of the respective franchise agreements of each of the shops. Dunkin' Donuts alleges that it lawfully terminated each of the franchises due to nonpayment of contractually required royalties and advertising fees. According to the complaint each of the shops is still being operated without valid trademark license or authorizations from Dunkin' Donuts. Three of the shops were in default in payment of these franchise fees while the other three, Dunkin' Donut claims, are in default due to nonpayment of the same fees based on an alleged "cross guarantee" contained in their franchise agreements. Dunkin' Donuts has moved for a preliminary injunction seeking to force all shops to cease operating as Dunkin' Donut shops.

The franchisees of the three shops not personally in default have moved to dismiss the complaint against them. The bases for the Motions are (1) that the cross guarantees are inapplicable because of a personal bankruptcy, (2) inadequate notice of default, (3) and therefore the defendants have valid licenses to operate Dunkin' Donut shops.

## II. **DISCUSSION**

The three donut shops that were personally in default on payment of franchise fees were terminated by Dunkin' Donuts on July 28, 2005. These three shops were being operated pursuant to franchise agreements signed by the Defendant, J.P. Investments, and by James Pielot, its principal shareholder. James Pielot and J.P. Investments filed for Chapter 7 bankruptcy protection on October 7, 2004 and June 15, 2004, respectively. These shops were located in Waukegan, Northbrook, and Riverwoods. The overdue fees all arose after the filings for bankruptcy protection.

The three other donut shops are located in Buffalo Grove, Highland Park and Deerfield, and are operated by Defendants, J.P. Retail Investments LLC, Highland Properties LLC and Deerfield Properties LLC, respectively (hereafter, the "Defendants"). At the time the franchise agreements were entered into for these three shops, James Pielot was a member of these three limited liability companies, which were created under the Illinois Limited Liability Company Act. 805 ILCS 180/5-1 et seq. Dunkin' Donuts was granted

express relief by the bankruptcy court from the automatic stay to enforce its rights under its franchise agreements.

The provision governing cross guarantee is as follows:

> 5.6 <u>Cross-Guarantee</u> - In the event FRANCHISEE, or any partner or shareholder of FRANCHISEE, now holds or hereafter acquires an interest in any other Dunkin' Donuts shop, FRANCHISEE agrees to be jointly and severally liable to DUNKIN' DONUTS as guarantor of the obligations of the franchisee under each franchise agreement for such other shop(s). Included in such guaranty is, without limitation, payment of all franchise fees, advertising fees, equipment payments, note payments, rental payments and tax payments to subsidiaries, if applicable, collection fees and general receivables now or hereafter due and payable to DUNKIN' DONUTS or guaranteed by DUNKIN' DONUTS to any third party. FRANCHISEE's liability under this paragraph shall be limited to the extent that the total sum due and payable by FRANCHISEE upon the account or debt of any other franchisee in default shall not exceed the total interest (as hereinafter defined) that the common shareholder(s) or partner(s), as the case may be, hold in FRANCHISEE. For this purpose, "interest" shall include without limitation, all equity in, assets, real estate interests of, loans or other financial interests of FRANCHISEE, held by or controlled by the common shareholder(s) or partner(s) or their immediate family, as the case may be. The terms of this paragraph shall not operate to extend any personal guaranty of any lease obligations by any shareholder(s) or partner(s), after such guaranty shall have expired or terminated by its terms.

Dunkin' Donuts contends that since James Pielot held an interest in each of the three non-JPI donut shops at the time the franchise agreements were entered into, the respective franchises became guarantors of the three defaulting shops and were therefore obligated to pay the overdue fees. By reason of failure to cure,

the three franchises were appropriately terminated by Dunkin' Donuts. Therefore, the motion to dismiss should be denied.

The three non-JPI donut shops contend, on the other hand, that at the moment James Pielot became a debtor in bankruptcy, he ceased being a member of the three franchisee LLCs by operation of law of Illinois law. *See*, 180 ILCS 180/35-45(7)(C). Their argument is based on their interpretation of Paragraph 5.6, third sentence, which limits the guarantee liability to "not exceed the total interest (as herein defined) that the common shareholder(s) or partner(s), as the case maybe, *hold* in the franchisee." (Emphasis supplied). They read this sentence to provide that the guarantee liability arises only at the time the payments become due and the actual liability is created. Consequently since James Pielot had already ceased being a member at the time of the non-payment of fees and the creation of the liability, the cross guarantee is not applicable. Dunkin' Donuts responds that this is a nonsensical reading of the paragraph because it renders the paragraph meaningless. The whole reason behind this paragraph is immediately and permanently to bind the franchisee to the guarantee at the moment the common ownership occurs. A common member could at anytime defeat the guarantee by divesting itself of its common membership prior to a breach.

The fact that a paragraph might be rendered meaningless by an interpretation is not necessarily fatal to that interpretation if

the language clearly requires that interpretation. The real issue before the Court is whether the third sentence allows a guarantor to escape liability under the cross guarantee by having the common owner divest itself from any interest in the guarantor. Defendants argue that use of the present tense of the word "hold" manifests the intent to allow divestiture by requiring interest valuation at the time of the *non-payment.*

At least one of the purposes of the cross guarantee is to inhibit a franchisee from moving assets from one corporation to another for the purposes of evading obligations, if an individual or group owns a number of franchise entities. 1 *Franchise and Distribution Law and Practice* § 4.11 (West, 2006). Obviously then Defendants' interpretation would defeat this purpose. As a prelude to filing bankruptcy the common owner could raid the poorer franchises at the expense of the richer ones. A further provision of the franchise agreement prohibits transfer or permitting a transfer to occur of any interest in the agreement "by operation of law or otherwise." The paragraph attempts to make such a transfer null and void and a default under the agreement. *See*, Paragraph 10.1 Transfer by FRANCHISEE. Obviously, Dunkin' Donuts does not have the power to void a transfer as a result of bankruptcy, but the paragraph reinforces the notion that Dunkin' Donuts did not intend to release a franchisee in the event of bankruptcy.

The Court believes that the provision is sufficiently ambiguous to defeat the Motion to Dismiss on this ground.

Defendants also contend that the notice of default of seven (7) days was inadequate to permit the opportunity to cure, therefore invalidating the franchise terminations under 815 ILCS 705/19(b). This question is highly fact intensive and is not amenable to resolution on a Motion to Dismiss. *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992).

### III. CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 16, 2006